CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
June 10, 2024
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ELIZABETH HARING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:23-cv-044 |
| ) | |
| MCMICHAEL TAYLOR GRAY, LLC, ) | |
| TODD RICH, ANDREW ) | By:    Michael F. Urbanski |
| KAMENSKY, and DIANA ) | Chief United States District Judge |
| THEOLOGOU, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Elizabeth Haring, proceeding in forma pauperis, initiated this action on July 19, 2023, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., against three lawyers and their law firm for efforts to evict Haring from a property following foreclosure on behalf of their client, U.S. Bank. This matter is before the court on defendants' motion to dismiss the amended complaint for failure to state a claim or, in the alternative, for summary judgment. ECF No. 20. Following careful consideration of the parties' arguments and the relevant caselaw, defendants' motion is **GRANTED**.

### I. BACKGROUND

In August 2004, Haring borrowed $172,000 from Lehman Brothers to buy a house at 53 Leigh Court in Basye, Virginia. Am. Compl., ECF No. 17, ¶ 8.[1] Haring defaulted on the

---

[1] The facts surrounding this dispute are well known to the court. This action is part of an ongoing dispute between the parties regarding this property, over which this court has presided in two prior actions. See Order, ECF No. 104, U.S. Bank Nat'l Ass'n as Tr. of Cabana Series III Tr. v. Haring, No. 5:19-cv-088 (W.D. Va. Jan.

loan several years later. Id. ¶ 9. In June 2019, a foreclosure sale was held for the property, and a Trustee's Deed was filed in the public land records of Shenandoah County, Virginia. Id. ¶ 10. U.S. Bank contends that it was the successful bidder at the foreclosure sale, and that the recorded deed vested title of the property in U.S. Bank. Def.'s Mot. to Dismiss, ECF No. 20, ¶ 5. Haring disputes this.

That October, U.S. Bank filed an unlawful detainer action in the General District Court for Shenandoah County, Virginia, seeking to take possession of the property from Haring. Haring then removed the action to this court. U.S. Bank Tr. Nat'l Ass'n as Tr. of Cabana Series III Tr. v. Haring, No. 5:19-cv-088 ("First Unlawful Detainer Action"). On July 19, 2022, as that litigation was pending, a lawyer representing U.S. Bank, Todd Rich, sent two letters to Henry McLaughlin, counsel for Haring. Both letters informed McLaughlin that Haring needed to remove her personal property from the residence. In the first letter, Rich told McLaughlin that U.S. Bank was "willing to arrange for their agent to meet with Ms. Haring at the house so that she can remove her personal property." Am. Compl., Ex. A, ECF No. 17-1. Rich requested that Haring respond within five days with "her intention to retrieve her property" and that she make arrangements to remove the property within 30 days. Id. He added that, if Haring did not wish to remove her property, "the bank will have the items removed and placed into storage for 30 days." Id.

The second letter similarly stated that U.S. Bank planned to remove Haring's items from the property "on or after August 22, 2022, unless acceptable arrangements to remove

---

27, 2023) (granting U.S. Bank's motion for voluntary dismissal); Order, ECF No. 22, U.S. Bank Nat'l Ass'n as Tr. v. Haring, No. 5:23-cv-028 (W.D. Va. Feb. 21, 2024) (remanding action to state court).

the items have been made between Ms. Haring and U.S. Bank, through counsel." Am. Compl., Ex. B, ECF No. 17-2. Rich stated that if McLaughlin failed "to respond [within five days] and/or make a good faith effort to coordinate removal of these items, U.S. Bank will dispose of the personal items on or after August 22, 2022, without further notice to you or Ms. Haring." Id.[2]

On August 25, 2022, U.S. Bank filed a motion for voluntary dismissal without prejudice of the First Unlawful Detainer Action, based on Haring's change in position regarding her possession of the property, and because Charles Coomes, Jr. and Charles Yeh had also since written to counsel for U.S. Bank with claims of tenancy and ownership of personal property at the residence. First Unlawful Detainer Action, Pl.'s Mot., ECF No. 92. The court granted U.S. Bank's motion on January 27, 2023. Order, ECF No. 104.

On February 21, 2023, U.S. Bank initiated a second unlawful detainer action in Shenandoah General District Court against Haring. On May 15, 2023, Haring, proceeding pro se, filed a notice of removal to this court. U.S. Bank Nat'l Ass'n as Tr. v. Haring, No. 5:23-cv-028 ("Second Unlawful Detainer Action"). On June 2, 2023, U.S. Bank filed a motion to remand on the grounds that Haring's notice of removal was untimely, and, on February 21, 2024, the court granted the motion and remanded the action to state court. Second Unlawful Detainer Action, Order, ECF No. 22.

---

[2] In her complaint, Haring alleges that Andrew Kamensky and Todd Rich sent the letters to frighten Haring into vacating the property, and that Kamensky directed Rich to send the second letter because the first letter was not aggressive enough (the first letter only threatened to place her belongings into storage, while the second letter threatened to "dispose of" her belongings). Am. Compl., ECF No. 17, ¶¶ 49–53.

Meanwhile, on June 19, 2023, Haring emailed Rich, Kamensky, and Diana Theologou—all lawyers representing U.S. Bank—to inform them that some of her personal property was stolen from the Basye, Virginia, property. Am. Compl., Ex. C, ECF No. 17-3. She continued by telling them that, earlier that day, "a woman named Jane driving a large F250 pickup truck showed up to the property." Id. Haring said that the woman told her that "Vista Property Preservation" had hired her to mow the grass, but that Haring noticed that she did not have a lawn mower in the truck, "[n]or was there grass needing to be cut." Id. Haring told the woman to "stay off the property" and the woman asked if Haring was "going to be in the area." Id. Haring told the lawyers that this was of "enormous concern" and that she notified the police. Id. She further emphasized that she "regained possession of the property on April 10, when law enforcement removed Charles Yeh," and that because "[n]o court has granted a judgment of possession[,] . . . [y]ou and your client and their agents need to stay off the property." Id. Theologou responded to the email the next day, June 20, 2023, stating only, "I have confirmed with my client and this was not my client." Id.

Haring initiated this action by filing a complaint and an application to proceed in forma pauperis on July 19, 2023, against the law firm McMichael Taylor Gray, LLC, and three lawyers who work for the firm—Todd Rich, Andrew Kamensky, and Diana Theologou (collectively, "defendants"). ECF Nos. 1, 2. On November 6, 2023, defendants filed a motion to dismiss the amended complaint or, in the alternative, for summary judgment, ECF No. 14, and Haring responded by filing an amended complaint, ECF No. 17.

The amended complaint alleges that defendants violated the FDCPA through three acts: (1) Rich's July 19, 2022, letters informing McLaughlin that U.S. Bank was planning to

4

remove Haring's personal items from the property, (2) Theologou's June 20, 2023, email denying Haring's accusation that a lawn mowing service was an agent of U.S. Bank, and (3) a separate allegation that McMichael Taylor Gray, LLC, Kamensky, and Rich at some point communicated with third parties (Bryce Resort, Sky Bryce Security, Sky Bryce HOA, and others) about Haring's debt. The complaint alleges these violations in five counts: threatening self-help eviction in violation of 15 U.S.C. § 1692f(6) and communicating with third parties regarding Haring's debt in violation 15 U.S.C. § 1692c[3] as to McMichael Taylor Gray, LLC (Counts One and Two), Todd Rich (Count Three), and Andrew Kamensky (Count Four), and engaging in deception in violation of the FDCPA as to Diana Theologou (Count Five).

On November 28, 2023, defendants filed a motion to dismiss the amended complaint or, in the alternative, for summary judgment. ECF No. 20.[4] Haring filed an opposition, ECF No. 24, and the court heard argument on April 26, 2024. Accordingly, the issues are fully briefed, and the motion is ripe for resolution.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).[5] To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

---

[3] Count Two of Haring's amended complaint alleges a violation of 15 U.S.C. § 1692b. Compl., ECF No. 17, at 8. However, the excerpt of the statute quoted in Count Two is from 15 U.S.C. § 1692c, id. ¶ 34, and in her briefing on the motion to dismiss, she argues that the violation arises under 15 U.S.C. § 1692c, Pl.'s Mem. Opp'n, ECF No. 24, at 10–11. Accordingly, the court construes Count Two as asserting a violation under Section 1692c.

[4] Defendants assert that Andrew Kamensky has not yet been served, but that he joins in the motion by special appearance without waiving any defenses.

[5] Because the court concludes that Haring's complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), the court does not reach the issue of whether summary judgment should be granted for defendants and, accordingly, does not state the law on summary judgment here.

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); see also Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a 'complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.'") (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis omitted)).

A court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). "Thus, 'in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579

6

F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009) (alterations omitted)).

## III. DISCUSSION

The FDCPA is a federal statute that "protects consumers from abusive and deceptive practices by debt collectors." Lord v. Senex L., P.C., No. 7:20-cv-541, 2023 WL 3727003, at *4 (W.D. Va. May 30, 2023) (quoting Crawford v. Senex L., P.C., 259 F. Supp. 3d 464, 468 (W.D. Va. 2017)). To state a claim under the FDCPA, a plaintiff must sufficiently allege (1) that the defendant is a "debt collector" as defined by the FDCPA, (2) that the plaintiff was the "object of collection activity arising from consumer debt," and (3) that the defendant "engaged in an act or omission prohibited by the FDCPA." Dikun v. Streich, 369 F. Supp. 2d 781, 784 (E.D. Va. 2005).

Defendants argue that Haring has failed to state a claim under the FDCPA because (1) while defendants are normally debt collectors within the meaning of the FDCPA, they were not acting as debt collectors here, (2) U.S. Bank's efforts to establish possession of the property that it purchased at a foreclosure auction does not make Haring the "object of collection activity," and (3) Haring has failed to establish that defendants "engaged in an act or omission prohibited by the FDCPA" for any of the three alleged violations.[6]

---

[6] Defendants also assert that Haring has not satisfied the heightened pleading standard under Federal Rule of Civil Procedure 9(b). Indeed, "several district courts, even those within the Western District of Virginia, require a plaintiff to meet the Rule 9(b) standard when bringing a claim pursuant to the FDCPA." Crawford, 259 F. Supp. 3d at 473. However, as Judge Conrad noted in Crawford, there is a split among district courts across the country on the issue, and "[m]any district courts have determined that 'the position rejecting 9(b)'s application to the FDCPA is better reasoned and more widely accepted.'" Id. (quoting Davis v. Wells Fargo Bank, 976 F. Supp. 2d 870, 885 (S.D. Tex. 2013) (alterations omitted)). Because the court is dismissing the complaint on other grounds, it does not reach this issue.

For her part, Haring asserts that defendants were acting as debt collectors and that the eviction efforts constituted a "debt collection"—thereby bringing defendants' alleged conduct within the ambit of the FDCPA—in two ways: (1) defendants sought court costs in the state court eviction actions, and (2) the Virginia statute under which defendants brought the eviction actions provides U.S. Bank the ability to seek damages against Haring. The court addresses each argument in turn.

### A. Debt Collectors

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It is well-settled that the definition includes lawyers and law firms if they "'regularly' engage in consumer-debt-collection activity." Lord v. Senex L., P.C., No. 7:20-cv-541, 2023 WL 3727003, at *7 (W.D. Va. May 30, 2023) (quoting Heintz v. Jenkins, 514 U.S. 291, 299 (1995)). "The question of whether a lawyer or law firm regularly engages in debt collection activity must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." Crawford, 259 F. Supp. 3d at 470 (internal quotations and alterations omitted).

Here, defendants concede that "they are normally debt collectors" within the meaning of the FDCPA but argue that they were not acting as debt collectors with respect to the alleged violations complained of by Haring because defendants were not seeking to collect a debt. Def.'s Mot., ECF No. 20, ¶ 88. This, however, ignores the holistic analysis that courts undertake to determine whether a law firm and its lawyers are debt collectors. As explained

above, a law firm is classified as a debt collector based on whether it "regularly" engages in debt collection activity. See 15 U.S.C. § 1692a(6). Accordingly, the court need not narrow its inquiry to the specific violations alleged in the litigation. See Crawford, 259 F. Supp. 3d at 470 (listing the many factors that "bear on whether an entity is regularly engaged in debt collection activity," including overarching features of the business such as the frequency of debt collection communications and whether the firm markets itself as a debt collector). Because defendants concede that "they are normally debt collectors" within the meaning of the FDCPA, the court will not grant defendants' motion to dismiss on this basis.[7]

### B. Object of a Debt Collection Activity

Defendants also argue that, even if they are debt collectors under the FDCPA, Haring cannot show that she was the "object of a debt collection activity," as defendants' post-foreclosure eviction efforts were not a debt collection, but rather an attempt to establish possession of a property that their client owned. The issue of whether Haring was the object of a debt collection is critical to the court's assessment of Haring's claims, as an answer in the negative means that her claims fall wholly outside the FDCPA's reach. This is demonstrated most clearly by the statute itself, as Haring alleges a violation of Sections 1692f(6) and 1692c, both of which are premised on a debt collector's efforts to collect a debt.[8]

---

[7] The court queries, however, whether defendants are "debt collectors" for purposes of the main coverage of the FDCPA. As the Supreme Court recently made clear, entities who are "engaged in no more than the 'enforcement of security interests'" (e.g., nonjudicial foreclosure proceedings) are debt collectors under the FDCPA only for purposes of Section 1692f(6). Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 1036 (2019).

[8] Section 1692f(6) provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(6) (emphasis added). Section 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b) (emphasis added). Haring may also

9

The Fourth Circuit instructs that "[d]etermining whether a communication constitutes an attempt to collect a debt is a 'commonsense inquiry' that evaluates the 'nature of the parties' relationship,' the 'objective purpose and context of the communication,' and whether the communication includes a demand for payment." In re Dubois, 834 F.3d 522, 527 (4th Cir. 2016) (alterations omitted) (quoting Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010)). However, the "absence of an explicit demand for payment" is not dispositive. Id. (concluding that a debt collector's filing of a proof of claim in bankruptcy court was a collection activity even though the filing contained no explicit demand for payment).

District courts "have reached varying conclusions" on the issue of whether eviction actions constitute debt collections within the scope of the FDCPA. O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 32–33 (D. Mass. 2014) (collecting cases). However, a guiding principle among those decisions seems to be that an eviction action may implicate the FDCPA where the action "includes some demand for payment tied to the property at issue (e.g., a utility bill, or damages for unpaid rent)." Id.; cf. Kowouto v. Jellum L., P.A., 672 F. Supp. 3d 699, 702 (D. Minn. 2023) (concluding that an eviction action for nonpayment of rent is a debt collection under Minnesota law because it "is equivalent to a demand for rent").

In Bond v. U.S. Bank Nat'l Ass'n, for example, the Eastern District of Michigan addressed this issue under similar circumstances as those here. No. 09-14541, 2010 WL 1265852, at *5 (E.D. Mich. Mar. 29, 2010). There, a consumer defaulted on a mortgage and a law firm, following the consumer's bankruptcy proceeding, instituted foreclosure proceedings

---

be alleging that defendants violated Section 1692e, which provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (emphasis added).

10

on the property. Id. at *1–2. U.S. Bank was the winning bidder of the auction. Id. After the consumer refused to vacate, a law firm representing U.S. Bank initiated summary eviction proceedings in Michigan state court. Id.

The court concluded that U.S. Bank's eviction action could not constitute "debt collection" under the FDCPA because the bank sought only possession, and no monetary damages relating to the property. Id. at *5. In so doing, the court noted the distinction between a foreclosure action and an eviction action, reasoning that the foreclosure action was a debt collection activity but that the eviction action was not:

> [F]oreclosure, not summary eviction, is the appropriate means of collecting on a defaulted mortgage debt. Foreclosure was commenced on September 10, 2008 and the sheriff's sale was completed on November 5, 2008. As described above, these debt collection activities are not the subject of this action. In contrast, summary eviction can only occur after title has changed hands and a former debtor remains in possession. At that point, the debt collection process has ended and the plaintiff is seeking possession of the property rather than monetary damages. U.S. Bank's summary eviction complaint confirms that it sought possession rather than monetary damages. Because U.S. Bank was not seeking to collect a debt when it initiated the summary eviction proceedings against Bond, its actions could not violate the FDCPA.

Id. (emphasis added).

Similarly, here, the foreclosure process has ended, and U.S. Bank now seeks possession of the property—with no request for monetary damages—through an unlawful detainer action under Virginia law. Haring, however, contends that, while U.S. Bank did not seek monetary damages in the eviction actions, those actions still constitute a debt collection activity for two reasons. First, "by operation of law," U.S. Bank has sought recovery of court costs in the

11

eviction actions. Pl.'s Mem. Opp'n, ECF No. 24, at 8.[9] Second, the Virginia statute under which defendants initiated the suits provides U.S. Bank the ability to seek damages against Haring. See Va. Code § 8.01-126(e)(4) (providing that the former owner of a foreclosed upon property "shall be responsible for payment of fair market rental from the date of such foreclosure until the date the tenant vacates the dwelling unit, as well as damages, and for payment of reasonable attorney fees and court costs"). Haring argues that, while U.S. Bank has not sought damages from Haring in the eviction actions, they could do so, which constitutes a debt collection.[10]

The court finds both of Haring's arguments unpersuasive. First, as to Haring's assertion that U.S. Bank's request for court costs constitutes a debt collection, her theory would mean that every legal action in Virginia constitutes a debt collection, given that—as she explains—court costs are "automatically sought in any lawsuit filed in Virginia." See Am. Compl., ECF No. 17, ¶ 11. Further, even if court costs could constitute a debt, that debt is speculative, as U.S. Bank may only collect court costs if it is successful in the action. In other words, no "debt" exists unless or until U.S. Bank is awarded judgment in its favor. See Va.

---

[9] Haring cites to Virginia's general rule on recovery of costs in support, which provides that "the party for whom final judgment is given in an action or motion shall recover his costs against the opposite party." Va. Code § 17.1-601. She explained that, as a result, court costs are "automatically sought in any lawsuit filed in Virginia." Am. Compl., ECF No. 17, ¶ 11.

[10] In support, Haring points to U.S. Bank's briefing on its motion for voluntary dismissal of the First Unlawful Detainer Action, in which U.S. Bank argued that it should not be precluded from seeking damages against Haring in a subsequent action. First Unlawful Detainer Action, Pl's Reply, ECF No. 94. Haring argues that this means that U.S. Bank intended to file a subsequent action seeking damages. Haring's argument fails to recognize, however, that U.S. Bank did file another unlawful detainer action and again did not seek damages from Haring. Counsel for defendants confirmed at the April 26, 2024, hearing on the motion to dismiss that U.S. Bank is only seeking to establish possession through the eviction actions and has not sought damages against Haring.

Code § 17.1-601 ("[T]he party for whom final judgment is given in an action or motion shall recover his costs against the opposite party.").

Haring's second argument—that the eviction actions are a debt collection because U.S. Bank has the ability to seek damages under Virginia law—also fails because U.S. Bank has brought two eviction actions and they have not sought damages in either. Because U.S. Bank has sought no monetary damages in either of its eviction actions, there is no attempt to collect a debt. Accordingly, the court concludes that Haring's claims fall outside the ambit of the FDCPA, and defendants' motion to dismiss for failure to state a claim must be **GRANTED**.[11]

## IV. LEAVE TO AMEND

Haring has asked for leave to amend should the court grant defendants' motion to dismiss. Rule 15 of the Federal Rules of Civil Procedure instructs that the "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (citations omitted). Accordingly, a court should only deny leave to amend a pleading when the amendment would be prejudicial to the opposing party, where there has been bad faith on the part of the moving party, or when the amendment would be futile. Johnson v. Oroweat Food Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). A proposed amendment is "futile if the claim it presents would not survive a motion to dismiss."

---

[11] Because the court has determined that Haring's complaint must be dismissed for failure to allege that Haring was the object of a debt collection, the court also concludes that she has failed to plead facts sufficient to show the third element—that defendants "engaged in an act or omission prohibited by the FDCPA"—because none of defendants' conduct occurred within the context of debt collection.

Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (citation omitted).

Here, Haring states that her amended complaint "demonstrate[s] an attempt to harass and bully Haring," and, "if the Court concludes Haring has not pled enough facts to support her claims related to such harassment and bullying, Haring asks the Court to allow her to amend one additional time." Pl.'s Mem. Opp'n, ECF No. 24, at 13. While it is doubtful that Haring will be able to bring her claims within the FDCPA's reach given that she does not allege an attempt to collect a debt, the court will allow Haring to attempt to remedy the deficiencies explained herein by granting her request for leave to amend the complaint.

## V. CONCLUSION

For the reasons stated above, defendants' motion to dismiss the amended complaint, ECF No. 20, is **GRANTED**. The amended complaint is **DISMISSED without prejudice**. Haring is granted leave of court to file a Second Amended Complaint within thirty (30) days if she so chooses.

An appropriate order will be entered.

Entered: June 10, 2024

Michael F. Urbanski
Chief United States District Judge

14